Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| ELIEZER SANTANA BÁEZ<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202400238 | *Revisión de Decisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: B-440-24<br><br>Sobre: Solicitud de Investigación |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 28 de junio de 2024.

El 6 de mayo de 2024, acudió ante este foro apelativo, el señor Eliezer Santana Báez (en adelante, señor Santana Báez o parte recurrente), por derecho propio y en forma *pauperis,* por medio de *Petición de Revisión Judicial.* Mediante este, nos solicita que revisemos la *Respuesta al Miembro de la Población Correccional* emitida el 27 de marzo de 2024, y notificada el 4 de abril de 2024, por el Departamento de Corrección y Rehabilitación (en adelante, DCR o parte recurrida).

Por los fundamentos que expondremos a continuación, confirmamos la determinación recurrida.

**I**

Según se desprende del expediente, el 18 de marzo de 2024, el señor Santana Báez presentó la *Solicitud de Remedio Administrativo.* Por medio de esta, la parte recurrente solicitó que se permitieran las visitas familiares de la señora Mercedes Beato Gil (en adelante, señora Beato Gil) al señor Santana Báez en la

institución correccional. Realizó unas alegaciones sobre la credibilidad del Oficial Michael Rivera Colón (en adelante, Oficial Rivera Colón). De igual manera, adujo que, ha recibido acoso y trato hostil de parte del Oficial Rivera Colón, y que este le suspendió las visitas. Añadió que, el Oficial Rivera Colón le había quitado sus espejuelos y que, no le había cambiado el *mattress* según había solicitado.

El 27 de marzo de 2024, la señora Maribel García Charriez (en adelante, señora García Charriez), emitió la *Respuesta al Miembro de la Población Correccional*, junto a esta anejó la *Respuesta del Área Concernida/Superintendente*, suscrita por el señor Víctor Maldonado Vázquez (en adelante, señor Maldonado Vázquez). La mencionada respuesta dispuso lo siguiente:

> En el caso señalado existe un documento remitido en agosto de 2023, de la oficina de programas y servicios de la región, donde se le prohíbe la entrada [a] Mercedes Beato, por una situación surgida con un paquete, en cuanto a los lentes, me informaron que usted tenía 4 pares y se qued[ó] con uno, el restante fue entregado a su familiar. En cuanto al mat[t]ress se le informar[á] al oficial para la entrega del mismo y se orientar[á] sobre las acciones de su puesto.

En desacuerdo, la parte recurrente presentó la *Solicitud de Reconsideración*. Reiteró que, el Oficial Rivera Colón debía ser investigado.

El 3 de mayo de 2024, fue acogida la petición de reconsideración.

El 20 de mayo de 2024, el DCR emitió la *Resolución* cuya revisión nos atiene. En su *Resolución*, el DCR esbozó las siguientes determinaciones de hechos:

1. El recurrente present[ó] Solicitud de Remedios Administrativos el 18 de marzo de 2024 ante el Evaluador de Remedios Administrativos, Maribel García Charriez de la Oficina de Bayamón. En su escrito solicita se investigue al oficial Michael Rivera por cancelación de visita y otras situaciones.

2. El 19 de marzo de 2024 se hizo Notificación dirigida al Sr. Víctor Maldonado V[á]zquez, Superintendente, Institución Correccional Bayamón 501.

3. El 27 de marzo de 2024 se recibió respuesta por parte del Sr. Víctor Maldonado V[á]zquez, Superintendente, Institución Correccional Bayamón 501, quien contest[ó] que existe un documento remitido en agosto 2023 de la Oficina de Programas y Servicios de la región, donde se le prohíbe la entrada a Mercedes Beato por situación surgida con un paquete, en cuanto a lentes me informaron que usted tenía 4 pares y se quedó con uno, el restante fue entregado a familiares. En cuanto al mat[t]ress se le informará al oficial para la entrega del mismo y se orientará sobre las acciones [de] su puesto.

4. El 4 de abril de 2024 se hace la entrega al recurrente del Recibo de Respuesta.

5. El 15 de abril de 2024, el recurrente inconforme con la respuesta emitida, presentó Solicitud de Reconsideración ante el Coordinador Regional de Remedios Administrativos. En síntesis, arguye que no está de acuerdo con la respuesta recibida.

6. Se acoge petición de reconsideración el 3 de mayo de 2024.

Finalmente, determinó confirmar y modificar la respuesta recibida por parte del señor Maldonado Vázquez.

Inconforme, el señor Santana Báez acudió ante este foro mediante *Petición de Revisión Judicial* y esgrimió el siguiente señalamiento de error:

Erró el DCR al conclu[i]r que iban a orientar a su oficial sobre las acciones de su puesto, cuando el asunto planteado presenta actuaciones de corrupción y violaciones a derechos civiles y merecía que se realizara una investigación según solicitada y no se hizo.

Por su parte, el 12 de junio de 2024, compareció el DCR por medio de *Escrito en Cumplimiento de Orden*. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A. *Estándar de Revisión Judicial de Determinaciones Administrativas***

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias

administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).[1] Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*; *OEG v. Martínez Giraud*, supra, pág. 89; *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012).  No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de PR*, supra, pág. 628, nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. (Énfasis suplido).[2]

---

[1] Véase también: *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

[2] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *OEG v. Martínez Giraud*, supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez*

*v. Supte. Policía,* supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd; OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820; *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115. Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra, págs. 36-37; *Torres Rivera v. Policía de PR*, supra, pág. 627. El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.* págs. 627-628; *OEG v. Martínez Giraud,* supra, pág. 90. Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.*

### B. *Reglamento Núm. 8583*

Conforme a las disposiciones contenidas en la LPAU y acorde con el Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, el cual establece las facultades del Departamento de Corrección y Rehabilitación, se creó el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583 de 3 de junio de 2015 (Reglamento Núm. 8583). Además, este fue promulgado al amparo de la ley federal conocida como *Civil Rights of Institutionalized Person Act*, con el fin de canalizar de forma efectiva los reclamos de la población correccional. *Pérez López v. Depto. Corrección*, supra, pág. 670.

El objetivo principal del referido esquema legal es que, toda persona recluida en una institución correccional disponga de un organismo administrativo, en primera instancia, ante el cual pueda presentar una solicitud de remedio, con el fin de minimizar las diferencias entre los miembros de la población correccional y el personal del Departamento de Corrección y Rehabilitación. Asimismo, este tiene como objetivo el evitar y reducir la presentación de pleitos en los tribunales de instancia. Véase, Introducción del Reglamento Núm. 8583, *supra*; *Pérez López v. Depto. Corrección*, supra, pág. 670. En específico, la Regla VI del Reglamento Núm. 8583, dispone que la División de Remedios Administrativos, tendrá jurisdicción para atender toda solicitud de remedio presentada por los miembros de la población correccional, relacionada directa o indirectamente con actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional, entre otras. *Pérez López v. Depto. Corrección*, supra, pág. 670.

El miembro de la población correccional tendrá la responsabilidad de presentar las solicitudes de remedios en forma clara, concisa y honesta, deberá establecer las fechas y nombres de las personas involucradas en el incidente. Asimismo, deberá ofrecer toda la información necesaria para dilucidar su reclamo efectivamente. Inciso 1, Regla VII del Reglamento 8583, *supra.*

Por otro lado, la Regla XIII, Sección 5, del Reglamento 8583, *supra,* dispone que el Evaluador tiene la facultad para desestimar las solicitudes de los miembros de la población correccional cuando se dan una serie de circunstancias, como haber radicado la solicitud de remedio más de una vez sobre el mismo asunto.

Finalmente, el Reglamento 8583, *supra*, dispone que, el Tribunal de Apelaciones podrá realizar la revisión judicial de las solicitudes de remedios administrativos instadas por los miembros de la población correccional. *Pérez López v. Depto. Corrección*, supra, pág. 671. En lo pertinente, dispone lo siguiente:

1. El miembro de la población correccional podrá solicitar revisión ante el Tribunal de Apelaciones, dentro del término de treinta (30) días calendarios, contados a partir de la fecha del archivo en autos de la copia de la Notificación de la Resolución de Reconsideración, emitida por el Coordinador de Remedios Administrativos o noventa (90) días a partir de la radicación de la Solicitud de Reconsideración acogida, si la Agencia no actúa conforme a la misma.

2. [...][3]

## C. Reglamento Núm. 9027

El Reglamento para Fomentar la Integración Familiar y Social en la Población Correccional, Reglamento Núm. 9027, fue creado conforme al derecho impuesto en el Art. VI Sección 19 de nuestra Constitución, la cual impone la responsabilidad de "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al

---

[3] Regla XV del Reglamento Núm. 8583, *supra.*

tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral social". Véase Art. II del Reglamento Núm. 9027. El precitado reglamento, dispone, que, bajo tal premisa, las instituciones correccionales deberán tener espacio para la familia, para que ello logre influenciar todas las vivencias, experiencias, aprendizajes y sentimientos que la población realiza en el núcleo familiar. De esta forma, debe incluirse la familia en el proceso de rehabilitación para mirarse desde la perspectiva de refuerzo positivo, con el propósito de lograr mejores comportamientos y disminuir el efecto de separación creado por la sentencia a cumplirse. Art. II del Reglamento Núm. 9027, *supra.* Es por lo que, se crea este reglamento donde la familia es el "principal elemento a considerar para que el privilegio de visitas cumpla su misión rehabilitadora en el miembro de la población correccional". Art. II del Reglamento Núm. 9027, *supra.* Según el propio Reglamento, sus disposiciones serán aplicables a todos los miembros de la población correccional recluidos en las instituciones correccionales y centros de tratamiento residencial del DCR; todos los funcionarios involucrados en procesos de autorización y supervisión de los visitantes autorizados mientras estén dentro de los predios de las facilidades correccionales; todos los funcionarios que visiten a miembros de la población correccional y a todos los visitantes autorizados. Art. IV del Reglamento Núm. 9027, *supra.*

El Art. XI del Reglamento Núm. 9027, en su inciso 5 dispone que, cada visitante autorizado deberá firmar una vez al año un documento en el cual certificará que conoce que el contrabando es ilegal, que es un acto contrario a la ley y que se compromete a no introducir contrabando dentro y en los predios de la institución. El referido documento será parte del expediente de visita. Por otro lado, el inciso 2 del Art. XXII del Reglamento Núm. 9027, *supra,* prohíbe permanentemente "la entrada a toda institución correccional al

visitante, suplidor o contratista que intente introducir cualquier tipo de contrabando dentro de las instituciones correccionales". El Reglamento Núm. 9027, *supra*, establece que la concesión de visitas a los familiares y relacionados **es un privilegio** que otorgan las instituciones correccionales, no fundamentadas por ninguna exigencia legal. (*Énfasis suplido*). De acuerdo a lo anterior, estas pueden ser restringidas, reguladas o canceladas, según sea necesario conforme a las circunstancias específicas de cada institución. Inciso 1 del Art. XXIV del Reglamento Núm. 9027, *supra*. La suspensión de las visitas solamente "podrá ser ordenada por el superintendente mediante la utilización de una medida de seguridad provista por el Reglamento Disciplinario para la Población Correccional, Regla 9-Suspensión de Privilegios". Inciso 3 del Art. XXIV del Reglamento Núm. 9027, *supra*.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En su recurso, la parte recurrente sostiene que la agencia recurrida incidió al concluir que iban a orientar al Oficial Rivera Colón sobre las acciones de su puesto.

Según reseñáramos, el señor Santana Báez presentó una solicitud de remedio donde arguyó que, recibió acoso y trato hostil por parte del Oficial Rivera Colón, y que, además, este último había suspendido las visitas. Igualmente, solicitó que se permitiera las visitas familiares de la señora Beato Gil a la institución correccional. Mediante la *Respuesta del Área Concernida/Superintendente*, suscrita por el señor Maldonado Vázquez, se informó que, las visitas de la señora Mercedes Beato se habían prohibido por una situación de contrabando. Además, se informó que, se le orientaría al Oficial Rivera Colón sobre las acciones de su puesto.

Evaluada la totalidad del expediente y la prueba presentada, no hemos encontrado que la agencia administrativa haya actuado de manera arbitraria o caprichosa que nos mueva a intervenir con su determinación. Como tribunal revisor, estamos llamados a dar amplia deferencia a las decisiones emitidas por las agencias administrativas, toda vez que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que le fueron delegados por la Asamblea Legislativa.[4] Es por ello que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*

Como bien señala la parte recurrida en su escrito de oposición, no surge del expediente administrativo que el señor Santana Báez hubiese señalado en su solicitud de remedio administrativo el lugar, día y hora de las alegadas acciones del Oficial Rivera Colón en su contra, conforme exige la Regla VII del Reglamento Núm. 8583, *supra*. Conforme a ello, el DCR se encontraba impedido de corroborar tal información. Asimismo, la agencia recurrida cumplió con atender las preocupaciones de la parte recurrente y proseguir a orientar al Oficial Rivera Colón respecto a su puesto de trabajo.

Por otro lado, respecto a las visitas de la señora Beato Gil, la agencia está facultada para suspenderlas cuando un visitante intente introducir cualquier tipo de contrabando dentro de una institución correccional.[5] Del expediente surge un documento fechado 15 de agosto de 2023, donde le fueron suspendidas permanentemente las visitas de la señora Beato Gil por intentar

---

[4] *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud,* supra, pág. 90; *Pérez López v. Depto. Corrección*, supra, pág. 672; *Super Asphalt v. AFI y otros*, supra, pág. 819; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 126; *Rolón Martínez v. Supte. Policía*, supra, pág. 35; *Torres Rivera v. Policía de PR*, supra, pág. 626; *Batista, Nobbe v. Jta. Directores*, supra, pág. 216; *Asoc. Fcias. v. Caribe Specialty et al. II*, supra, pág. 940.
[5] Inciso 2 del Art. XXII del Reglamento Núm. 9027, *supra.*

introducir contrabando dentro de la institución correccional. Debido a que las visitas son un privilegio[6], la agencia recurrida no incidió al no permitir la visita de la señora Beato Gil.

A la luz de lo anterior, insistimos en que, luego de un análisis del expediente ante nuestra consideración, razonamos que no se justifica nuestra intervención. Consideramos que, la parte recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera de los poderes que le fueron delegados.[7] Asimismo, somos del criterio de que, la parte recurrente no logró rebatir la presunción de corrección que cobija la determinación recurrida.

**IV**

Por los fundamentos antes esbozados, confirmamos la determinación recurrida.

Notifíquese a las partes, al Procurador General y al Secretario del Departamento de Corrección y Rehabilitación. El Administrador de Corrección deberá entregar copia de esta *Sentencia* al confinado, en cualquier institución donde este se encuentre.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[6] Inciso 1 del Art. XXIV del Reglamento Núm. 9027, *supra.*

[7] Véase *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626; *Pérez López v. Depto. Corrección*, supra, pág. 673; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.